**In re ASBESTOS LITIGATION LIMITED TO Arthur CARTER.**

Superior Court of Delaware, New Castle County.

Date Submitted: Oct. 6, 1992.
Date Decided: Oct. 7, 1992.
Opinion Issued: Jan. 4, 1993.

Michael T. Ward of the Law Offices of Peter G. Angelos, Wilmington, for plaintiffs.

Armand J. Della Porta, Jr. of Kelley, Jasons, McGuire & Spinelli, Wilmington, for defendant Owens–Corning Fiberglas.

Wayne A. Marvel of McCarter & English, Wilmington, for defendant Keene Corp.

### OPINION

GEBELEIN, Judge.

This is the formal decision on a motion to strike for cause all potential jurors who own stock in defendant corporations. Since the Delaware courts have not previously addressed the issue of whether a *per se* rule should be applied to disqualify all such persons from jury service, it is necessary for this Court to address this question. The appropriate standard requires that any potential juror who owns any stock, regardless of quantity, in a corporation which is a party to an action which seeks relief or damages against that corporation is incompetent to serve as a juror in that action. Such a juror must be excused from the panel for cause.

The issue of stock ownership in a party corporation as a bar to jury service arose in this case when a member of the jury pool admitted during voir dire that he owns approximately sixty shares of stock in E.I. du Pont de Nemours & Company, a publicly-held corporation which has nearly 2.4 million shares of preferred stock and more than 671.2 million shares of common stock outstanding,[1] and which is a defendant in the instant action. The juror indicated that he would nevertheless be capable of rendering a fair and impartial verdict in the courtroom, without regard for any effect that the verdict might have on the value of his shares.

Plaintiffs moved to strike for cause based upon the mere fact of ownership, arguing that the rule should be applied on a *per se* basis, without regard for the fact that the amount of stock owned by the juror represented only a minuscule fraction of the value of the company. Defendants argued that Plaintiffs were free to exercise a peremptory challenge to remove the juror from the panel if they wished to do so, but that to strike for cause would be inappropriate where, as here, the juror indicated that he could be impartial notwithstanding his pecuniary interest in one of the defendants.

This Court is not persuaded by Defendants' argument. A survey of authorities indicates that a majority of other jurisdictions which have addressed the issue have

1. Figures current through October 22, 1992. Standard & Poor's Corporation Records, vol. 53, no. 20, at 8405 (October 1992).

adopted Plaintiffs' position. *See* 47 Am. Jur.2d *Jury* § 192 (1969) ("A stockholder in a corporation is ordinarily incompetent to sit as a juror in an action to which the corporation is a party or in which it has a direct pecuniary interest."). That is, they apply a *per se* rule which requires any juror who has an ownership interest in any party to be removed from the jury panel for cause. The rule is perhaps best stated in *Gladhill v. GMC*, 4th Cir., 743 F.2d 1049 (1984), where the court faced a situation which was virtually identical to the case *sub judice*. In applying the *per se* rule, the court explained its position as follows:

> "That a stockholder in a company which is party to an action is incompetent to sit as a juror is so well settled as to be black letter law." [*Chestnut v. Ford Motor Co.*, 445 F.2d 967, 971 (4th Cir.1971).] ... The fact that the juror in the instant case, after disclosing stock ownership also swore that such ownership would not destroy the juror's objectivity, is irrelevant. If, as is the law, the juror is legally disqualified from acting, the juror's analysis of his subjective qualifications is beside the point.

*Gladhill*, 743 F.2d at 1050.[2]

Two cases arguably support the Defendants' position on this issue, *i.e.*, militate against the adoption of a *per se* rule. At closer inspection, however, these cases are clearly distinguishable from the case *sub judice*. First, in *Poynter v. Ratcliff*, 4th Cir., 874 F.2d 219 (1989), the court held that the trial court did not abuse its discretion in failing to excuse for cause a juror who was a patient of one of the defendant doctors and another juror who was a defendant in another malpractice suit. However, in declining to adopt a *per se* disqualification rule, the court noted in *Poynter* that it viewed *per se* rules as "exceptional" and that it had adopted them "only to disqualify jurors whose circumstances, such as a financial interest in the trial's outcome, show a clear likelihood of prejudice." The court cited a number of examples of such cases, including *Gladhill*.

Second, a recent decision of the Pennsylvania Superior Court in a personal injury action held that prospective jurors who belonged to the same diocese as the defendant church, but not to the particular defendant parish, need not be dismissed for cause. *Harmotta v. Bender*, 411 Pa.Super. 371, 601 A.2d 837 (1992). In those circumstances, the court viewed the financial interest of such individuals in the defendant as too remote to be disqualifying. However, the court also noted a relevant distinction:

> The challenged venirepersons who became members of the jury were not members of the Immaculate Conception Church of Vintondale *with a direct financial interest* in the outcome of the litigation, but merely members of the Altoona–Johnstown diocese with a remote interest.

*Harmotta*, 601 A.2d at 840 (emphasis added). Here, the prospective juror's financial interest in the defendant corporation, though perhaps small, is clearly a direct

---

2. The Fourth Circuit noted in *Gladhill* that the defendants in that case argued "vigorously" that the *per se* rule should be abandoned. It noted that "defendants could mount a forceful argument that the modern context of corporate ownership and the diffuse investments of the public should militate against a *per se* rule." 743 F.2d at 1050–1051. Though the court refused to consider this argument (on the grounds that, as a single panel of the court, it viewed itself as lacking the authority to overrule the *Chestnut* precedent on the issue), it did suggest that it would not be amenable to the merits of that position. It further cited a federal statute as indicative of Congressional support for the *Chestnut* rule:

> In 1974 Congress amended 28 U.S.C. § 455 to direct that a judicial officer should disqualify himself in any proceeding in which "he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest ... in a party to the proceeding ..." 28 U.S.C. § 455(b)(4). Under § 455(e), the judge may not even accept a waiver of this disqualification from the parties. We read § 455(b)(4) to require a judge who is a stockholder in a party to a case to disqualify himself from participation in the case even when he is not the factfinder. We would find it difficult to say, even if we were to address the question, that a less rigorous rule should apply to laymen who are chosen as jurors when they lack a lifetime of training in objectivity in the disposition of lawsuits. *Gladhill*, 743 F.2d at 1051.

interest, and therefore is not analogous to the remote interest at issue in *Harmotta*.

Thus, the clear weight of the authority supports a *per se* rule in these circumstances, and this Court sees no adequate reason to take a different approach. Therefore, this Court holds that all jurors who own any amount of stock in any party to an action must be removed from the panel for cause.